UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CERTAIN UNDERWRITERS AT LLOYDS
OF LONDON, ISSUING POLICY NOS.
509/DL458805 and 509/DL460005,

                            Plaintiff,

     -against-

ILLINOIS NATIONAL INSURANCE COMPANY,
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA, et al.,

                        Defendants.
-------------------------------------------------------------------X

Civil Action No.: 09 CV 4418 (RJH)

---

### MEMORANDUM OF LAW IN SUPPORT OF ILLINOIS NATIONAL INSURANCE COMPANY'S AND THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA'S MOTION FOR SUMMARY JUDGMENT

---

**BEVAN, MOSCA, GIUDITTA & ZARILLO**
A Professional Corporation
110 Wall Street, 11th Floor
New York, New York 10005-3817
(212) 576-1172

and

222 Mt. Airy Road, Suite 200
Basking Ridge, New Jersey 07920
(908) 753-8300

Attorneys for the Plaintiff
4Connections LLC

Filed Electronically on August 27, 2010

{00006516.1 }

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    A.    The Underlying Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

          1.    The Allegations Of The Woo Lawsuit . . . . . . . . . . . . . . . . .   3

          2.    The Allegations Of The Rocco Lawsuit . . . . . . . . . . . . . . . .   5

    B.    The Relevant Insurance Policies . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

          1.    The Illinois National Policy  . . . . . . . . . . . . . . . . . . . . . . . .   6

          2.    The ICSOP Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

ARGUMENT

    I.    THE SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . .   8

    II.    THE ILLINOIS NATIONAL POLICY WAS EXHAUSTED
            BY THE SETTLEMENT OF THE WOO LAWSUIT AND,
            THEREFORE, ILLINOIS NATIONAL HAS NO FURTHER
            COVERAGE OBLIGATIONS FOR THE ACCIDENT AT
            THE CONSTRUCTION SITE . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    III.    THE ICSOP POLICY DOES NOT PROVIDE COVERAGE
            TO DCM, CAS, GOLDMAN SACHS OR TISCHMAN
            FOR THE WOO OR ROCCO LAWSUITS . . . . . . . . . . . . . . . . . .   10

          A.    Pursuant To New York Choice Of Law Rules,
               New York Law Should Be Applied In Interpreting
               The ICSOP Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

          B.    Interpretation Of The ICSOP Policy . . . . . . . . . . . . . . . . . .   12

          C.    DCM, CAS Goldman Sachs And Tischman Are
               Not Insureds Under The ICSOP Policy  . . . . . . . . . . . . . . . .   13

          D.    The December 14, 2007 Accident Was Not The
               Result Of The Use Of A Vehicle By the ICSOP
               Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

          E.    Coverage Is Barred Pursuant To the "Mechanical
               Device" Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

{00006517.1 }

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABC, Inc., et al. v. Countrywide Ins. Co., et al., 308 A.D.2d 309,*
*764 N.Y.S.2d 244 (1st Dept. 2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505,*
*91 L.Ed.2d 202 (1986)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bruckner Realty, LLC v. County Oil Co., Inc., et al., 2006 WL 756090* . . . . 17

*Celotex Corp. v. Catreet, 477 U.S. 317, 106 S.Ct. 2548, 91*
*L.Ed.2d 265 (1986)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.,*
*36 A.D. 3d 17, 822 N.Y.S.2d 30 (1st Dept. 2006)* . . . . . . . . . . . . . . . . . . . . . . *10*

*Continental Ins. V. American Motorist Ins., 542 S.E.2d 607*
*(Ga. Ct. App. 2000)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Coughlin, et al. v. Turner Construction Co., et al., 296 A.2d 342, 745*
*N.Y.S.2d 164 (1st Dept. 2002)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dauthier v. Pointe Coupee Wood Treating, Inc., 560 So.2d 556*
*(La. Ct. App. 1990)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Donaldson v. Macey, et al., 122 Misc. 2d 256, 470*
*N.Y.S.2d 107 (Essex Cnty. 1983)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Eagle Ins. Co. v. Butts, 269 A.D.2d 558, 707 N.Y.S.2d 115 (2000)* . . . . . . . . 15

*Empire Ins. Co. v. Schliessman, et al., 306 A.D.2d 512, 763*
*N.Y.S.2d 65 (2nd Dept. 2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct.*
*1464, 89 L.Ed. 2079 (1945)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Harris v. Allstate Ins. Co., 309 N.Y. 72 (1955).* . . . . . . . . . . . . . . . . . . . . 12

*Hospital for Joint Diseases, et al. v. State Farm Mutual Automobile*
*Ins. Co., 8 A.D.3d 533, 779 N.Y.S.2d 534 (2nd Dept. 2004)* . . . . . . . . . . . . . 9

{00006517.1 }

*In Arbitration Between Vangard Ins. Co. and Polchlopek, et al.,*
*18 N.Y.2d 376 (1966)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      12

*Lumberman's Mut. Cas. Co. v. Logan, 88 A.D.2d 971, 451*
*N.Y.S.2d 804 (2nd Dept. 1982)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      16

*Maryland Casualty Company v. Continental Casualty Company,*
*332 F.3d 145 (2d Cir. 2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      10

*Matter of Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321 (1996).* . . . . . . . . .      12

*MIC Property & Cas. Corp. v. Avila, et al., -- N.Y.S.2d -- 65 A.D.3d 1303*
*(2nd Dept. 2009)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      18

*Miller, et al. v. Maryland Cas. Co., 6 N.Y.S.2d 64 (1938)* . . . . . . . . . . . . . .      18

*Morgan, Olmstead, Kennedy & Gardner, Inc. v. Federal Ins. Co.,*
*et al., 637 F.Supp. 973 (S.D.N.Y. 1986)* . . . . . . . . . . . . . . . . . . . . . . . . . .      9

*Mount Sinai Hospital, et al. v. Zurich America Ins. Co.,*
*15 A.D.3d 550, 790 N.Y.S.2d 216 (2nd Dept. 2005).* . . . . . . . . . . . . . . . . . .      9

*Nassau County Chapter of the Association for the Help Of*
*Retarded Children, Inc. v. Insurance Company of North America,*
*Inc., et al., 59 A.D.2d 525, 397 N.Y.S.2d 107 (2nd Dept. 1977)* . . . . . . . . . .      15

*Olin v. Moore, 178 A.D.2d 517, 577 N.Y.S.2d 446 (1991)* . . . . . . . . . . . . . .      16

*Paul M. Maintenance Inc. v. Transcontinental Ins. Co. et al.,*
*300 A.D.2d 209, 755 N.Y.S.2d 3 (1st Dept. 2002)* . . . . . . . . . . . . . . . . . . . .      14

*Pepper v. Allstate Ins. Co., 20 A.D.3d 633, 799 N.Y.S.2d 292*
*(3rd Dept. 2005)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      12

*Presbyterian Hospital in City of N.Y. v. Liberty Mutual Ins. Co.,*
*216 A.D. 2d 448, 628 N.Y.S.2d 396 (2nd Dept. 1995)* . . . . . . . . . . . . . . . . . .      9

*Progressive Cas. Ins. Co. v. Yodice, et al., 108 Misc.2d 863,*
*694 N.Y.S.2d 281 (Richmond Cnty. 1999)* . . . . . . . . . . . . . . . . . . . . . . . . .      16

*Progressive Ins. Cos. V. Nemitz, 39 A.D.3d 1121, 834 N.Y.S.2d 394*
*(3rd Dept. 2007)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      12

*Redland Select Insurance Company v. Washington, et al., 2010*
*W.L. 2854440 (W.D.N.Y. 2010)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      14

*Reisinger v. Allstate Ins. Co., 58 A.D.2d 1028, 397 N.Y.S.2d*
*52, aff'd, 44 N.Y.2d 881, 407 N.Y.S.2d 695 (1978)* . . . . . . . . . . . . . . . . . . .      16

iii

*Seidel, et al. v. Houston Casualty Company*, 375 F.Supp.2d 211
(S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Sochinski v. Bankers and Shippers Inc. Co.*, 221 A.D.2d 889,
634 N.Y.S.2d 269 (3rd Dept. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*State Farm Mut. Auto Ins. Co. v. Glinbizzi*, 9 A.D.3d 756, 780
N.Y.S.2d 434 (3rd Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*United National Ins. Co. v. Granoff, Walker & Forlenza, P.C., et al.*,
598 F. Supp.2d 540 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*U.S. Oil Ref. & Mktg. Corp. v. Aetna Cas. & Sur. Co.*, 181 A.D.2d
768, 581 N.Y.S.2d 822 (2nd Dept. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Worth Const. Co. Inc. v. Admiral Ins. Co.*, 40 A.D.3d 423 N.Y.S.2d 155
(1st Dept. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Zaccari v. Progressive Northwestern Ins. Co.*, 35 A.D. 3d 597,
827 N.Y.S.2d 204 (2nd Dept. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

## STATUTES

*Fed.R.Civ.P. 56(c)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

{00006517.1 }

Defendants Illinois National Insurance Company ("Illinois National") and The Insurance Company of the State of Pennsylvania ("ICSOP") respectfully submit this Memorandum of Law, together with the Affidavit of Jason P. Gratt, in support of their motion under Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the Plaintiff's Complaint for Declaratory Judgment as to Illinois National and ICSOP.

## PRELIMINARY STATEMENT

Plaintiff Lloyds[1] filed its Complaint seeking a declaration that Illinois National and ICSOP, and a number of other carriers, are obligated to provide insurance coverage to the owner, general contractor and various sub-contractors involved in the construction of Goldman Sachs and Company, Inc.'s ("Goldman Sachs") new headquarters building in Manhattan.   The insurance coverage dispute before this Court arises out of a December 14, 2007 accident at the Goldman Sachs construction site.

In the resulting personal injury lawsuits filed as a result of the accident, it is alleged that Norbet Trucking Corporation ("Norbet") delivered a load of steel beams to the site by means of a flatbed trailer.   The steel beams were hoisted by a crane operated by DCM Erectors, Inc. ("DCM") to the upper floors of the building under construction to be used by another sub-contractor, Component Assembly Systems, Inc. ("CAS"), in the construction of elevator shaft walls.

After several successful deliveries to the upper floors, the sling holding the steel beams to the crane allegedly failed, causing approximately seven tons of steel beams to fall several hundred feet to the street below.   It is further alleged that the failing beams injured Robert Woo

---

[1]   Certain Underwriters at Lloyds of London, issuing policy nos. 509/DL458805 and 509/DL460005.

("Woo") and Wilbert Rocco ("Rocco"), who both filed personal injury lawsuits in New York State Supreme Court.

At the time of the accident, Illinois National had issued an Owner Controlled Insurance Program ("OCIP") Policy to Goldman Sachs for the construction of its headquarters building at the site. The Illinois National policy had a per occurrence limit of $2 million, which Illinois National tendered in the settlement of the Woo lawsuit. Since the Illinois National policy is exhausted, Illinois National can have no further coverage obligations for any claim arising from the accident and, therefore, the declaratory judgment action against Illinois National should be dismissed.

ICSOP issued a Trucker's Policy to Norbet, which was in effect at the time of the accident. Norbet has not been named in the lawsuits filed by Woo and Rocco. However, Lloyds asserts in its Complaint that ICSOP owes insurance coverage to DCM, CAS, Goldman Sachs and Tischman Construction Corporation of New York ("Tischman") for their liability, if any, to Woo and Rocco. Lloyds' claims fail as to the ICSOP policy for several reasons, each of which individually supports the granting of summary judgment.

First, DCM, CAS, Goldman Sachs and Tischman do not qualify as "insureds" under the ICSOP policy. Second, even if any of these entities qualified as an "insured," the ICSOP policy limits coverage to bodily injury resulting from the ownership, maintenance or use of a covered auto. Under New York law, coverage afforded by such policies is limited to those instances where a plaintiff's injuries were proximately caused by a motor vehicle. Here, neither of the lawsuits filed by Woo or Rocco alleges that the accident was caused by the negligent use of the covered auto – Norbet's truck. Thus, the ICSOP Policy does not provide coverage.

{00009811.1 }

Finally, the ICSOP policy excludes coverage for any bodily injury that is caused by a mechanical device that is not attached to a covered vehicle. Both Woo and Rocco allege in their lawsuits that they were injured when steel beams fell from a crane that was not attached to the vehicle covered by the ICSOP policy. As such, there can be no coverage for the claims made by Woo and Rocco under the ICSOP policy.

## **FACTUAL BACKGROUND**

### A.    **The Underlying Claims**

On the day of the accident, Norbet delivered a load of steel beams to the construction site. The beams were ordered by CAS, which required them to construct elevator shaft walls in the Goldman Sach's building under construction. The delivery of the beams to the site was made by a flat bed trailer, which was driven by Rocco.

DCM lifted several loads of these beams, via a crane, and delivered them to CAS, which was working on the upper floors of the building under construction. On approximately the sixth lift, the nylon slings holding the beams to the crane failed, causing the beams to fall several hundred feet onto both a construction trailer, which was occupied by Woo, and the street below, where they struck Rocco's truck.

### 1.    **The Allegations Of The Woo Lawsuit**

Woo, who was employed as an architect at the construction site, was occupying a construction trailer when the steel beams fell from crane number 3. The steel beams crushed the trailer causing severe injuries to Woo. (Gratt Aff.[2] at ¶ 5, Exh. 3).

In September 2008, Woo filed a lawsuit in the Supreme Court of the State of New York, County of New York (the "Woo Lawsuit"). (Id.) The Woo Lawsuit named Battery Park City

---

[2] "Gratt Aff." Refers to the August 27, 2010 Affidavit of Jason P. Gratt.

{00009811.1 }

Authority, Tischman Construction Corporation of New York, Goldman Sachs, DCM, CAS, Total

Safety Consulting, LLC and Regional Scaffolding and Hoisting Company as defendants.  (Id.)

Norbet was not named as a defendant in the Woo Lawsuit.  (Id.)

In his complaint, Woo alleged:

57.     On December 14, 2007, the plaintiff ROBERT WOO, while working inside the trailer at the aforementioned construction site, was caused to sustain severe injuries when a sling hoisting construction materials failed causing the construction materials to fall and crush the trailer and plaintiff.

58.     The aforementioned occurrence was due to the negligence of the defendants, their agents, servants and employees, in causing, suffering, permitting and allowing the aforementioned construction site to be operated in a dangerous and unsafe manner; in negligently maintaining, managing, possessing, operating, supervising and controlling the aforementioned construction site, in particular, the area of the construction site where the construction materials were hoisted and fell and where plaintiff's trailer was located; failing to construct, equip, arrange, operate and conduct the operations at the construction site so as to provide reasonable and adequate protection for the safety of the plaintiff; in maintaining the construction site in a dangerous, defective, hazardous and unsafe condition; in failing to properly supervise the construction site; in failing to do routine inspections of the construction site; in failing to inspect and/or do routine inspections of the sling; in failing to warn or apprise persons working on and around the site that it was in a dangerous, hazardous, unsafe and improper condition; in failing to rectify, abate or alleviate the aforesaid dangerous, defective, hazardous and unsafe condition; in causing, permitting and allowing unsafe hoisting conditions; in providing and using a defective, weak and worn sling which was dangerous, hazardous, inadequate and unsafe for the foreseeable use for which it was provided; in causing, permitting and allowing a dangerous, hazardous and unsafe condition in using an old, damaged, worn and/or frayed sling to be used despite actual and/or constructive notice thereof; in failing to rectify the dangerous and hazardous condition despite notice thereof; in failing to provide proper and safe equipment, including a sling; in failing to have safety devices which would prevent construction materials from falling on plaintiff and other workers; in failing to properly supervise the hoisting operations and the use of the sling; in failing to properly train, instruct and supervise the crane operator(s) hoisting the sling in the use of the crane and sling and in the selection, inspection, cautions to personnel, effects of the environment and rigging practices with respect to the crane and sling; in failing to properly, adequately and safely use, rig, load, inspect, maintain, repair and remove the sling; in failing to properly and adequately train, instruct, teach and supervise the crane operator(s) how to safely us, rig, load, inspect, maintain, repair and remove the sling; in negligently and carelessly loading the sling; in negligently and carelessly using a sling that

4

was not safe and adequate for its purposes and posed a danger to the safety of plaintiff and others; in failing and omitting to provide the plaintiff with a safe and proper place to work; in directing the plaintiff to work in an area that was dangerous and hazardous in that active hoisting was taking place above plaintiff; in causing, permitting and allowing said area to become an remain in a dangerous, defective, hazardous and unsafe condition; in causing, permitting and allowing the trailer in which plaintiff was working to placed on top of a sidewalk shed and beneath active hoisting of construction materials; in failing to provide reasonable and adequate protection for the life, health and safety of the plaintiff; and in otherwise being careless and negligent. The plaintiff will also rely on the doctrine of Res Ipsa Loquitur.

59.     By reason of the foregoing, the plaintiff, ROBERT WOO, sustained severe injuries to his head, limbs and body, including, but not limited to, severe and permanent spinal cord injury, severe damage to the thoracic spinal cord, paraplegia, fractured sternum and ribs, pneumothorax, permanent nerve damage, a severe shock to the nervous system, certain internal injuries...

(Id.)

Not only was Norbet not named as a defendant in the Woo Lawsuit, but there were no allegations made by Woo that Norbet's truck was operated in a negligent manner. (Id.)

The Woo Lawsuit settled on February 12, 2009 and Illinois National, pursuant to its OCIP policy issued to Goldman Sachs, contributed its $2 million per occurrence limit towards the settlement amount. (Id. at ¶¶ 6 & 7).

## 2.     The Allegations Of The Rocco Lawsuit

In January 2009, Rocco filed his own lawsuit in the Supreme Court of the State of New York, County of New York (the "Rocco Lawsuit"). (Id. at ¶ 8, Exh. 4). The defendants named in the Rocco Lawsuit are the same defendants named in the Woo Lawsuit. (Id.) As was the case in the Woo Lawsuit, Norbet was not named as a defendant in the Rocco Lawsuit. (Id.)

According to the Rocco Lawsuit, on December 14, 2007 Rocco was working as a driver of a flatbed trailer carrying 17 tons of steel beams to the construction site. (Id.) Rocco's lawsuit alleges that "[o]n December 14, 2007, the Plaintiff while engaged in the course of his

5

employment as a driver of the flatbed trailer at the aforementioned construction site, was caused to sustain severe injuries when a sling hoisting the construction materials failed causing the construction materials to fall and crush the flatbed trailer attached to the cab Plaintiff was sitting in." (Id.) The remaining allegations made by Rocco are substantially similar to those made in the Woo Lawsuit. (Id.)

Rocco claims that, as a result of the accident, he was caused to sustain "severe injuries to his head, limbs and body, including, but not limited to, severe and permanent injury, severe and permanent damage to the vertebral spine, severe and permanent damage to spinal discs, spinal cord, paraplegia, permanent nerve damage, a severe shock to his nervous system [and] certain internal injuries…" (Id.)

Like in the Woo Lawsuit, there are no allegations by Rocco that there was negligent use of the Norbet tractor trailer that delivered the steel beams to the construction site. (Id.)

### B.    The Relevant Insurance Policies

#### 1.    The Illinois National Policy

Illinois National's OCIP policy (the "Illinois National Policy"), has a per occurrence limit of $2 million and provides, in relevant part, as follows:

1.    **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit' that may result.  But:

        (1)    The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance …

{00009811.1 }

*   *   *

**SECTION III – LIMITS OF INSURANCE**

1.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.    Insureds;
    b.    Claims made or "suits" brought; or
    c.    Persons or organizations making claims or bringing "suits".

(Emphasis in original).  (<u>Id.</u> at ¶ 3, Exh. 1).

2.    **<u>The ICSOP Policy</u>**

ICSOP's Trucker's Policy issued to Norbet (the "ICSOP Policy") contains the following

Insuring Agreement:

A.    **Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

(Emphasis in original).  (<u>Id.</u> at ¶ 4, Exh. 2).

The ICSOP Policy defines an "insured," in relevant part, as follows:

1.    **Who Is An Insured**

The following are "insureds":

    a.    You for any covered "auto".

    b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

        (4)    Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

7

(Emphasis in original). (Id.)

The ICSOP Policy contains the following "Mechanical Device" exclusion:

**B.    Exclusions**

This insurance does not apply to any of the following:

**8.    Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

(Emphasis in original). (Id.)

## ARGUMENT

### I.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate here because the material facts, namely the allegations of the underlying Woo and Rocco lawsuits and the terms of the Illinois National and ICSOP policies, are undisputed and Illinois National and ICSOP are entitled to judgment as a matter of law dismissing Lloyds' claims. *Fed.R.Civ.P.* 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

While Illinois National bears the initial responsibility to inform this Court of the basis for its motion, the burden is on any nonmoving party in opposing the motion "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes regarding an insurance carrier's coverage

{00009811.1 }

obligations and the interpretation and application of an insurance contract have been held particularly suitable to summary disposition. *Morgan, Olmstead, Kennedy & Gardner, Inc. v. Federal Ins. Co., et al.*, 637 F. Supp. 973, 976 (S.D.N.Y. 1986).

**II.   THE ILLINOIS NATIONAL POLICY WAS EXHAUSTED BY THE SETTLEMENT OF THE WOO LAWSUIT AND, THEREFORE, ILLINOIS NATIONAL HAS NO FURTHER COVERAGE OBLIGATIONS FOR THE ACCIDENT AT THE CONSTRUCTION SITE.**

Pursuant to the Illinois National Policy, Illinois National provided a defense for the enrolled contractors named in the Woo Lawsuit. Illinois National subsequently tendered its $2 million policy limit and that limit was ultimately accepted as part of the settlement of the Woo Lawsuit in February 2009. (Gratt Aff. at ¶¶ 6 & 7).With respect to the subject accident at the construction site, the Illinois National Policy is exhausted.

Under New York law, an insurer is not required to pay on a claim where its policy limits have already been exhausted. *Mount Sinai Hospital, et al. v. Zurich America Ins. Co.*, 15 A.D.3d 550, 551, 790 N.Y.S.2d 216, 217 (2nd Dept. 2005). "Where, as here, an insurer has paid the full monetary limits set forth in the policy, its duties under the contract cease to exist." *Hospital for Joint Diseases, et al. v. State Farm Mutual Automobile Ins. Co.*, 8 A.D.3d 533, 534, 779 N.Y.S.2d 534, 535 (2nd Dept. 2004), *quoting Presbyterian Hospital in City of N.Y. v. Liberty Mutual Ins. Co.*, 216 A.D.2d 448, 628 N.Y.S.2d 396, 397 (2nd Dept. 1995).

Therefore, Lloyds' claims against Illinois National are without merit and should be dismissed.

III.   **THE ICSOP POLICY DOES NOT PROVIDE COVERAGE TO DCM, CAS, GOLDMAN SACHS OR TISCHMAN FOR THE WOO OR ROCCO LAWSUITS.**

A.   **Pursuant To New York Choice Of Law Rules, New York Law Should Be Applied In Interpreting The ICSOP Policy.**

It is anticipated that Lloyds will argue that New Jersey law should be applied to the interpretation of the ICSOP Policy.  With respect to the insurance coverage issues raised under the ICSOP Policy, it is also anticipated that Lloyds will argue that New Jersey law differs from New York law and is favorable to its position, giving rise to a conflict of laws requiring this Court to make a choice of law determination.

Since the Court is hearing Lloyds' lawsuit pursuant to its diversity jurisdiction, it is respectfully submitted that it is obligated to utilize the choice of law rules of the forum state – New York. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).  With respect to the interpretation of insurance policies, New York applies the "center of gravity" or "grouping of contracts" test for conflicts of laws, pursuant to which a court is to apply "the law of the place which has the most significant contacts with the matter in dispute." *Seidel, et al. v. Houston Casualty Company*, 375 F. Supp.2d 211, 220 (S.D.N.Y. 2005), *quoting Maryland Casualty Company v. Continental Casualty Company*, 332 F.3d 145, 151 (2d Cir. 2003).

The purpose of the test is to apply the law of the jurisdiction "most intimately concerned" with the outcome of the litigation. *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 22, 822 N.Y.S.2d 30, 34 (1st Dept. 2006).  "Stated otherwise, the choice-of-law analysis is not 'a mindless scavenger hunt to see which state can be found to have more contacts, but rather ... an effort to detect and analyze what interests the competing states have in enforcing their respective rules.'" *Id.* at 27, 88 N.Y.S.2d at 37.

In considering choice of law for the ICSOP Policy, New York's interests are triggered by the fact that the accident giving rise to the two New York state court actions occurred at a construction site in New York. (Gratt Aff. at ¶¶ 5 & 8, Exhs. 3 & 4). In addition, ICSOP has its principal place of business located in New York. (Id. at ¶ 4, Exh. 2).

The only fact that Lloyds can use to support its argument that New Jersey law should be applied to the interpretation of the ICSOP Policy is that Norbet is a New Jersey company and the policy was issued in that state. Yet that fact should not lead this Court to apply New Jersey law to the ICSOP Policy, since the First Department, handling the same choice of law issue with identical facts in a recent case, determined that New York law applied to the policy at issue.

In *Worth Constr. Co., Inc. v. Admiral Ins. Co.*, 40 A.D.3d 423, 836 N.Y.S.2d 155 (1st Dept. 2007), *rev'd on other grnds*, 10 N.Y.3d 411, 888 N.E.2d 1043 (2008), the First Department determined that New York law applied to the interpretation of an insurance policy, issued in New Jersey, where the subject construction site and the underlying personal injury action were both in New York. The appellate court in *Worth* concluded:

> In deciding which law to apply, the motion court correctly found the center of gravity to be in New York, where the subject construction site was located and the underlying personal injury action is being litigated, not New Jersey, where Admiral issued its policy to Hackensack.

*Id.* at 424, 836 N.Y.S.2d at 156.

As was the case in *Worth*, here New York is the situs of both the construction accident as well as the underlying personal injury actions filed by Woo and Rocco and, therefore, the center of gravity is in New York and not New Jersey. As a result, it is respectfully submitted that New York law should be applied to the interpretation of the ICSOP Policy.

**B.     Interpretation Of The ICSOP Policy.**

In its Complaint, Lloyds alleges that ICSOP owes insurance coverage to DCM, CAS, Goldman Sachs and Tischman for the Woo and Rocco lawsuits.  In order to evaluate this allegation, this Court must interpret the ICSOP Policy to determine whether it provides coverage to these entities.

When interpreting an insurance policy under New York law, a court "must determine the rights and obligations of [the] parties under an insurance contract based on the policy's specific language." *Progressive Ins. Cos. v. Nemitz*, 39 A.D.3d 1121, 1122, 834 N.Y.S.2d 394, 395 - 96 (3rd Dept. 2007), *quoting Pepper v. Allstate Ins. Co.*, 20 A.D.3d 633, 634, 799 N.Y.S.2d 292, 294 (3rd Dept. 2005).  "Unambiguous provisions must be given their plain and ordinary meaning." *State Farm Mut. Auto. Ins. Co. v. Glinbizzi*, 9 A.D.3d 756, 757, 780 N.Y.S.2d 434, 436 (3rd Dept. 2004).  "The test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured reading the policy." *State Farm, supra, quoting, Matter of Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 326-27 (1996).  To that end, the New York Court of Appeals has held that a phrase contained within an insurance policy is to be construed not only in the context of the clause wherein it is found, but also, in light of the purpose sought to be accomplished by the clause.  *In re Arbitration Between Vangard Ins. Co. and Polchlopek, et al.*, 18 N.Y.2d 376, 380 (1966); *Harris v. Allstate Ins. Co.*, 309 N.Y. 72, 76 (1955).

Here, a plain reading of the relevant provisions of the ICSOP Policy leads to the conclusion that coverage is not afforded to DCM, CAS, Goldman Sachs and Tischman for the Woo and Rocco lawsuits.

{00009811.1 }

**C.    DCM, CAS, Goldman Sachs And Tischman Are Not Insureds Under The ICSOP Policy.**

The ICSOP Policy defines an "insured," in relevant part, as follows:

**1.    Who Is An Insured**

The following are "insureds":

**a.**    You for any covered "auto".

**b.**    Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

       **(4)**    Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(Emphasis in original). (Gratt Aff. at ¶ 4, Exh. 2). In addition to Norbet, coverage is extended, with certain exceptions, to those who use a covered auto with Norbet's permission. (Id.)

There are no allegations in the underlying actions that could support the argument that Goldman Sachs or Tischman were using the Norbet truck at the time of the accident and, therefore, those two entities cannot be entitled to coverage under the ICSOP Policy. (Id. at ¶¶ 5 & 8, Exhs. 3 & 4). Lloyds may argue that, due to their unloading of Norbet's trailer, DCM and CAS are "permissive users" of the vehicle and, therefore, are "insureds" under the ICSOP Policy. This argument, however, is precluded by the language of the ICSOP Policy.

With respect to unloading activities, permissive users are limited to Norbet's employees, partners, members, or a lessee, borrower, or an employee of a lessee or borrower while that individual is loading or unloading the covered auto. Pursuant to that language, DCM and CAS are not included as "permissive users" under the ICSOP Policy. This is due to the simple fact

13

that neither DCM nor CAS were employees, partners or members of Norbet.  Moreover, neither of these entities borrowed or leased the Norbet truck at issue here.

Furthermore, in *Paul M. Maintenance, Inc. v. Transcontinental Ins. Co. et al.*, 300 A.D.2d 209, 755 N.Y.S.2d 3 (1st Dept. 2002), the First Department of the Appellate Division indicated that a similarly worded provision would prohibit coverage for an accident caused when non-employees were involved in the loading and unloading of a vehicle.  *Id.* at 211, 755 N.Y.S.2d at 4-5.  Accordingly, neither CAS nor DCM is an "insured" under the ICSOP Policy.  *See also, Redland Select Insurance Company v. Washington, et al.*, 2010 W.L. 2854440 (W.D.N.Y. 2010).

### D.      The December 14, 2007 Accident Was Not The Result Of The Use Of A Vehicle Covered By The ICSOP Policy.

Even if DCM, CAS, Goldman Sachs or Tischman are insured under the ICSOP Policy, the policy's coverage is limited by the following insuring agreement:

**A.      Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" *and resulting from the ownership, maintenance or use of a covered "auto"*.

(Emphasis in original; italics added).  (Gratt Aff. at ¶ 4, Exh. 2).  The insuring agreement limits coverage to bodily injury resulting from the ownership, maintenance or use of a covered auto.

In New York, the coverage afforded by auto policies has been limited to those instances where a plaintiff's injuries were proximately caused by a motor vehicle.  "Manifestly, plaintiff's motor vehicle was not the proximate cause of his eye injury; that would have occurred even if plaintiff had not been in his motor vehicle at the time the injury was inflicted.  Plaintiff's use and operation of his motor vehicle being 'wholly incidental' to the event which produced the injury,

the Supreme Court properly concluded that defendant could not be held liable for the payment of first-party no-fault benefits." (Internal citations omitted). *Sochinski v. Bankers and Shippers Ins. Co.*, 221 A.D.2d 889, 889, 634 N.Y.S.2d 269, 270 (3rd Dept. 1995).

New York law utilizes a 3-part test to determine whether an accident has resulted from the use or operation of a covered auto. In order to be covered: (1) the accident must have arisen out of the inherent nature of the automobile; (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; and (3) the automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury. *Zaccari v. Progressive Northwestern Ins. Co.*, 35 A.D.3d 597, 599, 827 N.Y.S.2d 204, 206 (2nd Dept. 2006), *quoting, U.S. Oil Ref. & Mktg. Corp. v. Aetna Cas. & Sur. Co.*, 181 A.D.2d 768, 768 – 69, 581 N.Y.S.2d 822, 823 - 24 (2nd Dept. 1992). *See also Empire Ins. Co. v. Schliessman, et al.*, 306 A.D.2d 512, 513, 763 N.Y.S.2d 65, 66 (2nd Dept 2003), *quoting, Eagle Ins. Co. v. Butts*, 269 A.D.2d 558, 558 – 59 (2000) ("Generally, the determination of whether an accident has resulted from the use or operation of a covered vehicle requires the consideration of whether, *inter alia*, the accident arose out of the inherent nature of the vehicle and whether the vehicle itself produced the injury.") (Italics in original).

The phrase "use or operation" of a motor vehicle has been routinely examined under New York law. While the term "use or operation" includes all activities that are necessarily part of driving a car (*Nassau County Chapter of the Association for the Help of Retarded Children, Inc. v. Insurance Company of North America, Inc., et al.*, 59 A.D.2d 525, 526, 397 N.Y.S.2d 107, 109 (2nd Dept. 1977)), it is simply not broad enough to include any use for which the vehicle was designed. "The no-fault coverage required by the statute applies for use of the motor vehicle qua

15

motor vehicle, not the use of equipment built into the vehicle to serve some other function." *Donaldson v. Macey, et al.*, 122 Misc. 2d 256, 258, 470 N.Y.S.2d 107, 109 (Essex Cnty. 1983), *quoting Reisinger v. Allstate Ins. Co.*, 58 A.D.2d 1028, 397 N.Y.S.2d 52, *aff'd*, 44 N.Y.2d 881, 407 N.Y.S.2d 695 (1978) (Court held that there was no coverage under an auto policy for injuries sustained when the gas stove attached to a vehicle exploded).

Under New York law, "not every injury occurring in or near a motor vehicle is covered by the phrase 'use or operation.' The accident must be connected with the use of an automobile *qua* automobile." (Italics in original). *Empire, supra* at 513, *quoting, Olin v. Moore*, 178 A.D.2d 517, 518, 577 N.Y.S.2d 446, 447 (1991). *See also Progressive Cas. Ins. Co. v. Yodice, et al.*, 108 Misc.2d 863, 867, 694 N.Y.S.2d 281, 283 (Richmond Cnty. 1999) ("Not every accident involving an automobile concerns the use or operation of that vehicle. The accident must be connected with the use of the automobile qua automobile. The use of the automobile as an automobile must be the proximate cause of the injury."); *Lumberman's Mut. Cas. Co. v. Logan*, 88 A.D.2d 971, 971, 451 N.Y.S.2d 804, 805 (2nd Dept. 1982) ("The use of the motor vehicle must be the proximate cause of the injury in the underlying action to come within the ambit of the 'use or operation' clause.").

The case of *Coughlin, et al. v. Turner Construction Co., et al.*, 296 A.2d 342, 745 N.Y.S.2d 164 (1st Dept. 2002), presents a similar fact pattern to matter at bar. In *Coughlin*, the plaintiff alleged that, while working on the flatbed portion of a truck, he was injured when a crane, which was being used to offload the truck, struck its cab, causing him to fall. Relying upon the fact that there was no showing of any negligence on the part of the owner of the truck, the First Department refused to find that there was an obligation to provide insurance coverage.

16

One year later, the First Department went even further in its decision in the matter of *ABC, Inc., et al. v. Countrywide Ins. Co., et al.*, 308 A.D.2d 309, 764 N.Y.S.2d 244 (1st Dept. 2003). Noting that there was no "cognizable allegation of negligence with regards to the covered vehicle" in the underlying claim, the court again refused to impose a coverage obligation upon Countrywide Insurance Company. In fact, the court specifically held "[s]imply sustaining an injury during the unloading process, without any showing of negligent use of the truck, does not invoke liability coverage under the vehicle insurance policy." *See also Bruckner Realty, LLC v. County Oil Co., Inc., et al.*, 2006 WL 756090 * 3 ("Absent such allegations as to negligent use of the vehicle, the insurer has no obligation to defend let alone indemnify the insured").

There are simply no allegations in either the Woo or Rocco Lawsuits that the accident was caused by the negligent use of Norbet's truck. (Gratt Aff. at ¶¶ 5 & 8, Exhs. 3 & 4). As such, the ICSOP Policy does not provide coverage to DCM, CAS, Goldman Sachs or Tischman.

### E.    Coverage Is Barred Pursuant To The "Mechanical Device" Exclusion.

The ICSOP Policy also contains the following exclusion:

### B.    Exclusions

This insurance does not apply to any of the following:

### 8.    Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

(Emphasis in original). (Gratt Aff. at ¶ 4, Exh. 2).

Pursuant to this exclusion, there is no coverage under the ICSOP Policy for any bodily injury resulting from the movement of property by a mechanical device (other than a hand truck) that is not attached to a covered vehicle. As both Woo and Rocco allege in their lawsuits that

17

{00009811.1 }

they were injured when steel beams fell from a crane that was not attached to the covered Norbet vehicle, there can be no coverage for the Woo or Rocco lawsuits under the ICSOP Policy. (Id. at ¶¶ 5 & 8, Exhs. 3 & 4).

Exclusions in insurance policies will be enforced if the exclusion in question is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the case at hand. *MIC Property & Cas. Corp. v. Avila, et al.*, -- N.Y.S.2d --, 65 A.D.3d 1303 (2nd Dept. 2009); *United National Ins. Co. v. Granoff, Walker & Forlenza, P.C., et al.*, 598 F. Supp.2d 540, 546 (S.D.N.Y. 2009). In *Miller, et al. v. Maryland Cas. Co.*, 6 N.Y.S.2d 64 (1938), a New York appellate court excluded coverage for injuries caused by the operation of a hand truck, since the underlying injuries were caused by the operation of an excluded piece of equipment. *Id.*

More recently, the United States District Court for the Western District of New York found that a similarly worded exclusion precluded coverage for an accident that occurred while a trailer was being unloaded by means of a crane. In *Redland Select Insurance Company v. Washington, et al.*, 2010 W.L. 2854440 (W.D.N.Y. 2010), the court held that a similarly worded "mechanical device" exclusion "clearly and explicitly" excluded coverage for an accident resulting from the use of a mechanical device. *Id.* at * 2. In finding that there could be no coverage under the policy at issue the Court held:

> In this case, the Gilbraltar employee who caused the accident was using a crane owned and operated by Gilbraltar, and unattached to the insured truck. An insurer has no duty to defend where the alleged basis for liability is not within the scope of the policy's coverage, particularly where "allegations of the complaint cast that pleading solely and entirely within the policy exclusions. Here, the loss in question is explicitly excluded from Anstrom's coverage. Accordingly, Redland had no duty to defend or indemnify Anstrom in relation to the January 20, 2005 accident.

*Id.* at *3.

{C0009811.1 }

Courts in other jurisdictions have held similarly. In *Dauthier v. Pointe Coupee Wood Treating, Inc.*, 560 So.2d 556 (La. Ct. App. 1990), the court held that the exclusion would prohibit coverage for an injury that occurred while unloading a flatbed trailer with a forklift. "Clearly, in this case, the decedent's injuries occurred as a result of the movement of property (the pilings) by a mechanical device (the forklift) that was not attached to the covered auto (Julian truck). The policy language clearly and unambiguously sets forth that no coverage is afforded for bodily injury resulting from the activity which caused the decedent's death." *Id.* at 558. Similarly, the Georgia Court of Appeals held in *Continental Ins. v. American Motorist Ins.*, 542 S.E.2d 607 (Ga. Ct. App. 2000), that the unloading of a truck by means of a "pallet jack" was also excluded by operation of the "Movement of Property by Mechanical Device" exclusion.

The "Movement of Property by Mechanical Device" exclusion is clear and unambiguous and is applicable to the facts presented by the Woo and Rocco lawsuits. Therefore, there can be no coverage for the underlying lawsuits under the ICSOP Policy.

19

## CONCLUSION

For the foregoing reasons, Defendants Illinois National Insurance Company and The Insurance Company of the State of Pennsylvania respectfully request that the Court grant their motion for summary judgment and dismiss Plaintiff Lloyds' claims against them with prejudice.

Dated:  Basking Ridge, New Jersey
        August 27, 2010

                              Respectfully submitted,

                              BEVAN, MOSCA, GIUDITTA & ZARILLO, P.C.

                              By: s/ Anthony J. Zarillo, Jr.
                                  Anthony J. Zarillo, Jr. (AZ0711)
                                  Jason P. Gratt (JG1103)
                                  110 Wall Street, 11th Floor
                                  New York, New York 10005-3817
                                  (212) 576-1172

                                  and

                                  222 Mt. Airy Road, Suite 200
                                  Basking Ridge, New Jersey 07920
                                  (908) 753-8300
                                  azarillo@bmgzlaw.com

                                  *Attorneys for Defendants*
                                  *Illinois National Insurance Company and*
                                  *The Insurance Company of the State of*
                                  *Pennsylvania*

{00009811.1 }